Dear Judge Gray:
Your request for an opinion has been forwarded to me for research and reply. In the 2008, an audit by the Louisiana Legislative Auditor of Orleans Parish Juvenile Court ["Juvenile Court" "Court"] revealed that the Juvenile Court had approximately $248,000.00 of unclaimed bond monies in its possession. The Juvenile Court has attempted to locate the records of unclaimed bond monies and the rightful owners of this money. As noted in your request, the Juvenile Court "does not maintain adequate records prior to 2000 to identify the rightful owners of unclaimed bond monies prior to 2000." In a letter dated November 23, 2009, the Louisiana Legislative Auditor notified the Court that "its finding relating to unclaimed bond monies in the possession of the Court, finding 2008-2, has not been resolved." The Juvenile Court is seeking a legal opinion from this Office to help "resolve this recurring audit finding." Specifically, the Juvenile Court has raised a total of ten (10) "procedural" questions to our Office in relation to two separate issues.
I. Procedural Inquiries Regarding Appropriation of Funds in Cases ofCriminal Neglect or the Uniform Reciprocal Enforcement of SupportStatute
If an individual commits the offense of criminal neglect as defined in La.R.S. 14:74, he or she may be required to enter into a "recognizance, with or without surety, in order that the defendant shall make his or her personal appearance in court whenever required to do so and shall further comply with the terms of the order or of any subsequent modification thereof." La.R.S. 14:74(D)(3). If a surety or a bond has been posted andthe Court, after exercising all of the *Page 2 mandatory procedures, cannot return the money to the party who paid thebond, then pursuant to La.R.S. 13:1568.1, the Court may deposit the cashbond money into its judicial expense fund. La.R.S. 13:1568.1 states as follows:
A. The Orleans Parish Juvenile Court by a majority of its judges acting en banc may appropriate and use for the necessary expenses and operation of the court all sums of money represented by unclaimed cash bonds on deposit with the court under the following conditions:
(1) When proceedings under R.S. 14:74 or under the Uniform Reciprocal Enforcement of Support Statute have been instituted and subsequently dismissed and a cash appearance bond remains on deposit with the court and cannot be returned to the owner in spite of diligent effort by the court because the whereabouts of the party posting the bond remain unknown and two years have elapsed from the date of the dismissal of court proceedings.
(2) When a case was filed under R.S. 14:74 or under the Uniform Reciprocal Enforcement of Support Statute and five years have elapsed from the last hearing without further action by any party at interest to reset the case for further judicial redress, and no support payments have been made pursuant to the court order by the party cast in judgment for at least five years, and the whereabouts of the party posting the cash bond remain unknown in spite of diligent effort to locate and return the money to the proper owner, and there is no warrant outstanding.
B. Before any such sums are appropriated under the provisions of this Section, the court shall publish a notice in the official daily journal for the parish seeking information concerning the whereabouts of the party at interest.
C. When these procedures have been followed and the court cannot return the money to the proper party at interest, the court may appropriate and use the cash bond money by depositing it in the judicial expense fund of the court to be used for the necessary expenses and operation of the court functions as determined by the judges.
D. Notwithstanding the provisions of this Section, the owner of a cash bond so appropriated, upon proper identification and evidence of ownership, may reclaim the bond money at any time even though appropriated and used pursuant to this Section. The court *Page 3 
shall set aside a reserve of ten percent of all such sums appropriated against this contingency and shall maintain an ongoing inventory of all such funds.
E. Whenever the efforts of the court to locate the party posting the bond has resulted in the return of the bond money, the court shall be entitled to reimbursement for the cost of the advertisement plus an additional fee not to exceed twenty-five dollars which may be withheld from the bond money
(West 2011) (emphasis added).
In your request, you have raised the following questions in light of the foregoing statutory provision:
1. What is the procedure when the Court cannot locate the file but knows the name of the owner, amount of the bond, whether there is a warrant (if applicable), and where the owner is located?
2. What is the procedure when the Court cannot locate the file but knows the name of the owner, amount of the bond, whether there is a warrant (if applicable), but not where the owner is located?
3. What is the procedure when the Court cannot locate the file but knows the name of the owner, amount of the bond, where the owner is located, but not whether there is a warrant (if applicable)?
(emphasis added).
The Clerk of Court has the responsibility to maintain and preserve the Court's records. In the questions presented, the Juvenile Court admits that it "does not maintain adequate records prior to 2000." The Louisiana Civil Code of Procedure places the responsibility of maintaining records squarely upon the shoulders of the clerk of court. La.C.C.P. art. 251(A) plainly states that "[t]he clerk of court is the legal custodian of all of its records and is responsible for their safekeeping and preservation." Therefore, the improper maintenance of legal records prior to 2000 is problematic, because each file should contain the date of the last hearing in the matter, whether the case has been dismissed, and if there are any warrants outstanding. Calculation of time before the release of any bond paid hinges upon these factors. Where these requirements have not been adequately followed, our analysis and opinion are of limited utility. *Page 4 
In all three of the foregoing questions there is one common element: the inability of the Court to locate the file in which there are unclaimed bonds. Therefore, certain factors will most likely be in dispute upon notification of the proper bond owner, including the amount of the bond, date of the action's dismissal, and whether there is a viable warrant. These issues will have to be evaluated by the Juvenile Court in a proper proceeding (e.g., hearing), where each party (e.g., the Clerk's Office or Parish and the bond owner) will have the opportunity to present argument and evidence.
According to Black's Law Dictionary, "diligence" is defined as "[a] continued effort to accomplish something; care; caution; the attention and care required from a person in a given situation." Whereas "due diligence" is defined as follows: "[t]he diligence reasonably expected from, and ordinarily exercised by a person who seeks to satisfy a legal requirement or to discharge an obligation." According to La.R.S. 13:1568.1
(A)(2), the Court in this instance must exercise "diligence" in locating the bond owner.
Despite the missing records, where the Juvenile Court knows the name and the location of the owner of the unclaimed cash bond, as presented in your first and third questions, it would seem feasible for the Juvenile Court to exercise diligence by attempting to contact the bond owner directly. Again, those records on file with the Court pre-2000 were not properly maintained. Therefore, it would be our Office's opinion, that in those instances where the Court has the name and location of the owner of the bond, the Court should exercise diligence in attempting to contact the bond owner by sending notice to the owner via certified mail at the address on file. As for publication purposes, La.R.S. 13:1568.1(B) only requires publication within the parish seeking information; in this case that would be Orleans Parish. However, there is a presumption that the entire file is available for review. Because this is not the case here, in order to exercise diligence, publication within the Parish of Orleans may not be sufficient. In those cases where the Court only knows the name and address of the bond owner, then publication within the parish daily journal of the bond owner's "location" would demonstrate diligence on the part of the Court. Additionally, this would also provide the Court with proper documentation of its actions. Receipts mailing the notice via certified mail and from publication in the official daily parish journal would provide proper documentation for the Court to retain in its records to demonstrate how it diligently attempted to notify the bond owner.
As for your second question, in those instances where the name of the bond owner is available but not her address, then a diligent effort is still required to be made to contact the bond owner. As noted above, although La.R.S. 13:1568.1 only requires publication within the parish seeking information about the bond owner (in this case Orleans Parish), there is a presumption that the entire file is available for review. Unfortunately, this is not the case here. Hence, in order to *Page 5 
exercise diligence, publication within the Parish of Orleans may not be enough. In other words, state-wide publication in an official daily journal may be required. Based upon the foregoing, it would be our Office's opinion that where the bond owner's location is unknown, the Juvenile Court should publish a notice in the "official daily journal for the parish seeking information concerning the whereabouts of the party at interest," and in a statewide daily journal regarding the unclaimed property. Again, this would provide proper documentation of the Juvenile Court's diligent effort to contact the bond owner.
In those instances where there is no information available about the bond owner, as raised in your fourth question, the Juvenile Court's exercise of "diligence" for notification purposes becomes much more complicated. Arguably, the only reason the Juvenile Court has been left with residual monies is due to the failure of the Clerk's Office to properly maintain the court's records. Nevertheless, our Office acknowledges that it would be unduly burdensome to require the Court to issue notice in the parish journal for Orleans seeking any bond owner in any case of criminal neglect of family and under the Uniform Interstate Family Act before 2000 to notify the Court. Yet, there are viable alternatives.
In your inquiry, the unclaimed funds cannot be linked to any particular person due to incomplete records. Pursuant to La.R.S. 9:154(A) of the Unclaimed Property Act, "[p]roperty is presumed abandoned if it is unclaimed by the apparent owner during the time set forth below for the particular property for the following: . . . (10) Property held by a court, state or other government, governmental subdivision or agency, public corporation, or other public authority, one year after the property becomes distributable, except as provided in La.R.S. 15:86.1." Therefore, one option for the Court would be to order the unclaimed and unidentifiable funds to be placed into the "Unclaimed Property Division" of the Louisiana Department of the Treasury.
Another option for the Court to disburse the unclaimed funds may be the use of the Cy Pres Doctrine. Traditionally, the Cy Pres Doctrine has been used in class action settlements "[w]hen a class action settlement agreement is silent as to the distribution of excess funds, or when there is an adjudicated class recovery that results in unclaimed funds, the district judge must make the determination about the appropriate distribution of the surplus."[1] The Cy Pres Doctrine has been described as the "disposition of funds that have not been individually distributed, by distributing them for the next best use which is for indirect class benefit."[2] Although this inquiry does not involve a class action settlement, the Cy Pres Doctrine may still be a viable option for the unclaimed funds. In fact, if the Cy Pres Doctrine is used in this case, then the Court could order that the unclaimed *Page 6 
funds be directed to a charity that plays an active role in cases of criminal or familial neglect. (e.g., CASA). Please note that this is not a legal requirement, but merely our suggestion to rectify the Parish's failure to keep adequate records that has led to the Auditor's findings.
II. Procedure for Handling Unclaimed Bonds Under Delinquency Provisionsof the Children's Code of Louisiana
The remaining six (6) questions in your opinion request pertain to those procedures that govern unclaimed bonds from juvenile proceedings where the juveniles are the defendants, and result in someone posting cash bonds on their behalf. La.Ch.C. art. 825 authorizes the juvenile court to set bail and require some form of security to ensure that the juvenile appear for her court date. The juvenile, her parent, her guardian, or her legal custodian may execute a bail bond on her behalf. La.Ch.C. art. 825(1). However, the Louisiana's Children's Code does not outline how a court may lawfully retain unclaimed cash bonds from a juvenile defendant. Where procedures are not provided in the Children's Code "the court shall proceed in accordance with the Code of Criminal Procedure." La.Ch.C. art. 803. Therefore, our attention is directed to La.C.Cr.P. art. 324 which offers guidance to courts as to the disposition of unclaimed bonds.
La.C.Cr.P. art. 324(B) states as follows:
Upon final disposition of all cases in which a deposit of money, checks, bonds, or money orders has been made pursuant to this Article, and said deposits have remained unclaimed for a period of one year from the date of said final disposition, the officer authorized to accept said bail shall apply and use one-half of said funds for the operation and maintenance of the office of the clerk of court, or the office of the clerk of the criminal district court, or the office of the clerk of the criminal district court in parishes having a population of four hundred fifty thousand or more, and one-half to the local governing authority after advertising his intention to so utilize said funds by publication in the official parish journal of a notice to the public containing an itemized list of all of said funds on deposit, containing the names and last known addresses of defendants and the docket numbers of the cases involved. Said publication shall be made once within thirty days after the final disposition of the case as aforesaid. The clerk shall also send a notice by certified mail to each of said defendants at the last known address of said defendant. Any interest earned on the funds deposited for bail shall be disbursed as provided in Paragraph E of this Article. *Page 7 
The first question raised in your inquiry is quoted verbatim:
Is it a violation of Louisiana Children's Code Article 412, requiring confidentiality of juvenile records, for the court to follow the procedures set out in Code of Criminal Procedure Article 324 pertaining to the court's retention of unclaimed bond monies, including publication of the names and addresses of defendants, their docket numbers, and an itemized list of all funds on deposit? If so, what procedure is applicable?
It is well-known that juvenile records and reports, with few minor exceptions (i.e., traffic violations), are entitled to confidentiality. La.Ch.C. art. 412. Therefore, publicizing a juvenile's name in an official parish journal as suggested in La.C.Cr.P. art. 324, unless it involved a traffic violation, would violate the confidentiality requirement. Instead, our Office would suggest a slight deviation from La.C.Cr.P. art. 324. Instead of publishing the juvenile's full name, address, and criminal docket number in an official journal, the Clerk of Court could publish the juvenile's initials and her date of birth. This will protect the juvenile's identity as required under La.Ch.C. art. 412
and provide her the notice as required under La.C.Cr.P. art. 324. A slight deviation from La.C.Cr.P. art. 324 is necessary in this case, to protect the juvenile's right to privacy while ensuring substantial compliance with this provision.
Your second inquiry is as follows:
If the procedure set out in Code of Criminal Procedure Article 324 is applicable to the court's retaining unclaimed bonds in juvenile cases, where the officer authorized to accept bail has not advertised in the official parish journal within thirty days after the final disposition of the case, what procedure can the court follow in order to retain the unclaimed bond funds?
The failure of the designated officer to comply with the publication requirements should not enable the Court to retain the unclaimed bond funds because it creates a perverse incentive to ignore the publication requirements. Notice requirements should be satisfied as soon as possible to allow for the thirty day publication requirement before the Court may entertain the idea of retaining the unclaimed bond funds. Therefore, as previously noted in our response to question number one, our Office would suggest a slight deviation from La.C.Cr.P. art. 324 wherein the juvenile's initials and date of birth are publicized in the daily parish journal. *Page 8 
Your third question is as follows:
If the procedure set out in the Code of Criminal Procedure Article 324
is applicable to the court's retaining unclaimed bonds in juvenile cases, what is the procedure when the Court cannot locate the file but knows the name of the owner, amount of bond, the docket number and where the owner is located?
(emphasis added).
If the location and identity of the individual who paid the bond is known to the Court, then it would be appropriate to send her notice via certified mail. As for publication purposes, because the bond paid involves a criminal juvenile defendant's proceeding, it would only be appropriate to publicize the juvenile's initial's and date of birth in the official daily parish journal where the bond owner is located. As noted above, although La.R.S. 13:1568.1 only requires publication within the parish seeking information about the bond owner (in this case Orleans Parish), there is a presumption that the entire file is available for review. Unfortunately, this is not the case here. Hence, in order to exercise diligence, publication within the Parish of Orleans may not be enough. In addition, certain factors will most likely be in dispute upon notification of the proper bond owner, including the amount of the bond and the docket number. These issues will have to be evaluated by the Juvenile Court in a proper proceeding (e.g., hearing), where each party (e.g., the Clerk's Office or Parish and the bond owner) will have the opportunity to present argument and evidence.
In your fourth inquiry, you have asked the following question:
If the procedure set out in Code of Criminal Procedure Article 324 is applicable to the court's retaining unclaimed bonds in juvenile cases, what is the procedure when the Court cannot locate the file but knows the name of the owner, amount of the bond, the docket number, but not where the owner is located?
(emphasis added).
In this scenario, the only unknown information is the location of the bond owner. Because the location of the bond owner is unknown, publication in an official daily parish journal would be necessary before the Court could claim the funds, with those deviations discussed in response to question number one (i.e., juvenile's initials and birth-date). And yet, because the location of the bond owner is unknown, due to the Clerk's failure to maintain the records, it would be unfair to punish the bond owner by only providing notice in the Orleans Parish Journal. Instead, the Court could exercise diligence by publicizing the juvenile's initials and date of birth in a state-wide daily journal. *Page 9 
Your fifth question asks the following:
If the procedure set out in Code of Criminal Procedure Article 324 is applicable to the court's retaining unclaimed bonds in juvenile cases, what is the procedure when the Court cannot locate the file but knows the name of the owner, amount of bond, where the owner is located, but not the docket number?
(emphasis added).
In this scenario, because the Court knows the owner of the bond and where she is located, the Court should exercise diligence in sending a certified letter notifying the bond owner of the unclaimed funds. The Court could also exercise diligence by publishing the juvenile defender's initials and date of birth in the official parish journal where the bond owner is located (for those same reasons expressed in response to question 3) before the Court could claim the funds. The fact that the docket number is unknown could be problematic if the owner of the bond has several outstanding bonds, some potentially in the same amount, in multiple juvenile matters.
Your final inquiry asks the following verbatim:
If the procedure set out in Code of Criminal Procedure Article 324 is applicable to the court's retaining unclaimed bonds in juvenile cases, what is the procedure when the Court cannot locate the file, does not know the name of the owner, amount of bond, the docket number, nor where the owner is located, i.e. what is the procedure when the Court has residual bond monies after locating all of the owners and bond amounts that the Court has in its possession.
(emphasis added).
Again, because the responsibility for maintaining the Court's files rests upon the Clerk of Court, the failure to maintain proper records may not be attributed to the juvenile or the individual who posted bond. Instead, when the Court lacks any information about the juvenile's case (i.e., the file, name of the bond owner, amount of the bond, where the owner is located), then the Court should utilize the official parish journal to publicize the juvenile's initials and date of birth (assuming this information is available). If the juvenile's name is available, the Juvenile Court should consider posting the funds as unclaimed property with the Louisiana Department of the Treasury. Because the funds arise out of dealings with a juvenile, however, special arrangements may need to be made with the Unclaimed Property Division of the Louisiana Department of the Treasury in order to maintain the confidentiality of the juvenile. (e.g., post the juvenile's initials and date of birth). Another option would be to utilize the Cy Pres Doctrine as discussed earlier, and distribute the unclaimed funds to a local organization *Page 10 
who assists with preventing juveniles from getting involved with crime (e.g., Boys and Girls Club) or helps with rehabilitation after they enter the criminal justice system.
III. Conclusion
Overall, the responsibility for maintaining the Court's files lies with the Clerk of Court. When the Court is unable to locate the files of those individuals involved in various juvenile proceedings, before the unclaimed bonds may be taken and used by the Court for its own purposes, the Court must still exercise diligence in attempting to contact the bond owners to allow them to reclaim their funds. When Court files are missing or unaccounted for, slight deviations may need to be exercised in order to ensure that the Juvenile Court is exercising diligence as required by law before assuming control of the "unclaimed funds".
We hope that this information sufficiently answers your inquiries. If we can be of further assistance, please do not hesitate to contact us.
Very truly yours,
JAMES D. "BUDDY" CALDWELL
ATTORNEY GENERAL
By: __________________________
KATHERINE K. GREEN
Assistant Attorney General
JDC:KKG:jv
[1] Turner v. Murphy Oil USA, Inc., 2009 WL 1507414 at *3 (EDLA 2009).
[2] Id. at *4.